UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT MARTIN,

               Petitioner,

v.                                CASE NO. 2:05-72325
                                HONORABLE NANCY G. EDMUNDS

PAUL RENICO,

               Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Robert Martin has filed a *pro se* Petition for the Writ of Habeas Corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state convictions for first-degree murder, assault with intent to commit murder, and possession of a firearm during the commission of a felony (felony firearm). Having reviewed the pleadings and record, the Court concludes that the habeas petition must be DENIED.

## I. Background

Petitioner's convictions arose from an incident that occurred on Griggs Street, in Detroit, Michigan on July 24, 1998. Late that afternoon, twelve-year-old Kiana Martin, who is Petitioner's cousin, accused fourteen-year-old Catherine Crawley of talking to Kiana's boyfriend. Catherine denied the accusation and went home, but Kiana threatened to "get [her] girls." About twenty minutes later, Kiana went to Catherine's house and began fighting with her. Tamika Martin, who is Kana's sister, joined in the fight, but adults in the area intervened and stopped the altercation.

After the fight, people in the neighborhood noticed two cars (a green Fiesta and a white

Neon) drive by a few times.  When the white Neon drove by a third time, witnesses saw a

window in the car roll down and the long barrel of a gun emerge from the window.  Gunshots

followed.  An infant by the name of Kaylin Jeter was shot and killed.  Kenneth Carter was shot

in the finger while holding Kaylin, and Titus Brown was shot in the arm, leg, and back.  As

further explained by the state court,

> [t]here was testimony that [Petitioner] was seated in the back of the white Neon
> where a long gun was seen firing toward the onlookers on the street.  There was
> also testimony that a dark complexioned man was the shooter.  One witness
> identified the dark complexioned man as Damon Pasha, another passenger in the
> Neon.  [Petitioner] gave a statement and others testified to the effect that
> [Petitioner] initiated the attack and bragged about the shooting afterward.

*People v. Martin*, No. 98-08752, at 1-2 (3d Cir. Ct. Sept. 8, 2003).

Petitioner did not testify or present any witnesses.  His defense was that he did not fit the

description of the shooter and that he did not aid and abet anyone.  Defense counsel argued that,

if the jurors believed Petitioner was one of the people in the white Neon, he was merely present

and, therefore, not guilty.

On April 26, 1999, a Wayne County Circuit Court jury found Petitioner guilty as charged

of first-degree murder, Mich. Comp. Laws § 750.316, two counts of assault with intent to

commit murder, Mich. Comp. Laws § 750.83, and felony firearm, Mich. Comp. Laws §

750.227b.  The trial court sentenced Petitioner to life imprisonment for the murder, to concurrent

terms of twenty-five to fifty years in prison for each assault, and to a consecutive term of two

years for the felony firearm conviction.  The Michigan Court of Appeals affirmed Petitioner's

convictions and sentence in an unpublished *per curiam* opinion, *see People v. Martin*, No.

223448, 2001 WL 1277411 (Mich. Ct. App. Oct. 23, 2001), and on May 29, 2002, the Michigan

Supreme Court denied leave to appeal.  *See People v. Martin*, 466 Mich. 867; 645 N.W.2d 661

(2002) (table).

On February 12, 2003, Petitioner filed a motion for relief from judgment, which raised several new claims. The trial court denied his motion, and the State's appellate courts denied leave to appeal. *See People v. Martin*, No. 252509 (Mich. Ct. App. July 9, 2004); *People v. Martin*, No. 127037 (Mich. Sup. Ct. May 31, 2005).

Petitioner filed his habeas corpus petition on June 13, 2005. The grounds for relief read:

I.    There was not sufficient evidence to support the conviction of Robert Martin especially where the prosecutor is forced to rely on a statement where Defendant denies being the shooter and the prosecutor argues an aiding and abetting theory as an alternative.

II.    Robert Martin was denied his right to a fair trial and due process of law when he was forced to proceed in front of the jury wearing jailhouse slippers.

III.    Robert Martin was denied his state and federal constitutional rights to a fair trial by the prosecutor's unexplained and unjustified late endorsement of witness Barbara Vaughn.

IV.    The trial court erred by denying Robert Martin's motion to suppress his custodial statement.

V.    The trial court abused its discretion in finding that Defendant was not prejudiced with joint trial, as co-defendant's counsel undermine Defendant's position by shifting the burden of proof upon the Defendant which prejudiced Defendant's defense, denying Defendant's state and federal constitutional rights. Mich. Const. 1963, Art 1 17&20; U.S. Const. Amend. XIV.

VI.    Defendant was denied due process and a fair trial when inadmissible hearsay evidence was introduced, denying Defendant his state and federal constitutional rights. Mich. Const. 1963, Art 20; U.S. Const. Amend. XI, XIV.

VII.    As a result of prosecutorial misconduct and ineffective assistance of counsel in failing to object to the prosecutorial misconduct, Defendant was denied due process of law and a fair trial, in violation of Defendant's state and federal constitutional rights.

Mich. Const. 1963, Art 1 Sec 17, 20; U.S. Const. Amend. V, VI, XIV.

VIII. Ineffective Assistance of Counsel.

## II. Respondent's Procedural Default Argument

Respondent argues in an answer to the habeas petition that the state court's adjudication of Petitioner's first four claims was reasonable and that Petitioner's last four claims are barred by his failure to raise those issues on direct appeal. Petitioner raised claims V through VIII in a motion for relief from judgment and in an appeal from the trial court's decision on his motion. The trial court adjudicated the merits of claims V through VIII, but the State's appellate courts declined to review those claims for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).

Rule 6.508(D)(3) prohibits state courts from granting relief from judgment if the defendant alleges nonjurisdictional grounds that could have been raised on appeal from the conviction or sentence.[1] The United States Court of Appeals has determined that a state court order denying relief under Rule 6.508(D) is a sufficient explanation for federal district courts to conclude that the order was based on a state procedural bar, which precludes habeas review of the underlying claims. *See Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002); *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000). Respondent therefore maintains that habeas review of claims V through VIII is precluded.

In *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004), the Sixth Circuit was faced with the

---

[1] An exception exists when the defendant demonstrates "good cause for failure to raise such grounds on appeal" and "actual prejudice from the alleged irregularities that support the claim for relief." Mich. Ct. R. 6.508(D)(3).

4

same procedural default defense. Even though the Michigan Supreme Court denied Abela leave to appeal, the trial court and the Michigan Court of Appeals denied relief for lack of merit in the grounds presented. The Sixth Circuit concluded that the petitioner's claims were not procedurally defaulted because the two lower courts made a determination on the merits.

The last court to issue a reasoned opinion in this case was the trial court. It adjudicated claims V through VIII on the merits, as opposed to denying relief under Rule 6.508(D). Thus, under *Abela*, claims V through VIII are not procedurally defaulted. The Court will proceed to analyze all of Petitioner's claims, using the following standard of review.

## III. Standard of Review

A habeas petitioner is entitled to the writ of habeas corpus if he or she can show that the state court's adjudication of the claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. Section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

## IV. Discussion

### A. Sufficiency of the Evidence

Petitioner alleges that there was insufficient evidence to support his convictions. He claims there was no evidence that he fired the gun, which killed one person and injured two other people. He contends that the two individuals who implicated him were not reliable and that his own statement to the police suggests mere presence at the crime scene. He also notes that he was not identified at several lineups and that Herticine Harris actually identified someone else in the lineup. In addition, Petitioner claims that Michael Monroe fit the description of the suspect better than anyone else, and two witnesses implicated Damon Pasha as the shooter.

The Michigan Court of Appeals concluded on review of Petitioner's claim that a sufficient factual basis was established to sustain the verdict and that Petitioner was correctly

identified as the architect of the murder.  The United States Supreme Court has held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  After *Winship,* the critical question on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original).

Barbara Vaughn testified that she heard Petitioner say he was going to Griggs Street to shoot up the people's house because some guy pulled a gun on the girl that was fighting. Petitioner then went in his house, retrieved a sawed off shotgun, went back outside, and got in the back seat of the white Neon.  (Tr. Apr. 20, 1999, at 829-37, 845-47, 874, 877.)

Kiesha Caldwell saw Petitioner in the back seat of the white Neon with a long gun on his lap.  Petitioner said to Tamika Martin, "Come on, Tamika, let's do this."  Then the group in the car drove off.  When the group returned and began discussing what had happened, Petitioner said that he knew he had shot three people because he had fifteen shots, and the other guy had three bullets.  (Tr. Apr. 19, 1999, at 717; Tr. Apr. 20, 1999, at 754-55.)  Petitioner also said that he did not intend for the baby to get shot, but a man was using the baby as a shield.  (Tr. Apr. 19, 1999, at 722-23.)  A rational trier of fact who viewed the evidence in a light most favorable to the prosecution could have concluded that Petitioner was one of two people who fired at the people

on Griggs Street.

Alternatively, the jury could have concluded that Petitioner aided and abetted the shooter. He admitted in his statement to the police, which was read to the jury, that he went to get his semi-automatic rifle after he heard that someone had hit his cousin Kiana with a gun. He also informed the police that, after Tamika Martin showed him the house where Kiana was hit, he dropped off Tamika, and went back to the house with another armed man to shoot the person who hit Kiana with the gun. Although he denied actually shooting anyone, he told the officer who took his statement that he gave his gun to a light-skinned man, who fired fifteen bullets from the gun.

Petitioner contends that the witnesses' testimony was not reliable or consistent and that his statement to the police was a denial of criminal responsibility. A habeas court, however,

> does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir.1992). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir.2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788 -789 (6th Cir. 2003). Here, the evidence was sufficient to convict Petitioner as a principal or as an aider and abettor to the shooting. Therefore, the state appellate court's conclusion that there was a sufficient factual basis to support the convictions did not result in a decision that was not contrary to, or an unreasonable application of, *Jackson*.

**B. Attendance at Trial in Jail House Slippers**

Petitioner alleges that his rights to a fair trial and to due process of law were violated when he was forced to appear in front of the jury wearing jailhouse slippers. The Michigan Court of Appeals concluded on review of this claim that Petitioner's footwear, if perceptible, did not undermine the integrity of the trial and did not result in manifest injustice.

Compelling a defendant to wear identifiable prison clothing at trial can violate the constitutional right to due process because it impairs the presumption of innocence so basic to our adversary system. *Estelle v. Williams,* 425 U.S. 501 (1976). "[T]he constant reminder of the accused's condition implicit in such distinctive identifiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout the trial that . . . an unacceptable risk is presented of impermissible factors coming into play." *Id*. at 504-05.

On the eighth day of Petitioner's nine-day trial, defense counsel requested regular shoes for Petitioner because counsel "happened to notice" that Petitioner was wearing jail slippers. Petitioner explained to the trial court that, although he had been wearing shoes throughout trial, his shoes became lost in the property room at the jail. The trial court promised to "look into it," but there is no further mention of the matter in the record. (Tr. Apr. 22, 1999, at 1067-68.) Petitioner alleges that nothing was done and that he was forced to proceed with jail slippers.

The effect of wearing jail slippers for a small portion of the trial likely did not have a bearing on Petitioner's presumption of innocence because it is possible that the jury did not even notice the slippers. Defense counsel stated that he just "happened to notice" the slippers. Even if Petitioner wore jail slippers for a day or two of his trial, any impact on the presumption of innocence was "considerably less than the negative impact of a defendant being dressed in prison

attire throughout the entirety of his or her trial." *Burton v. Renico*, 391 F.3d 764, 777 (6th Cir. 2004), *cert. denied*, 546 U.S. 821 (2005). "Jurors in a criminal case . . . are likely to presume that a criminal defendant, irrespective of his or her guilt or innocence, has spent at least some time in custody as a result of being charged with a crime, particularly one such as murder." *Id*. at 778.

The Court concludes that the wearing of jail slippers for one or two days was not so fundamentally unfair as to rise to the level of a due process violation and to require reversal of Petitioner's conviction. *See id*. at 777-78. Consequently, the state court's adjudication of Petitioner's claim was not contrary to, or an unreasonable application of, *Estelle v. Williams.*

## C. The Prosecutor

The third and seventh habeas claims allege prosecutorial misconduct, and the eighth claim alleges that defense counsel was ineffective for failing to object to the prosecutor's conduct. Petitioner claims that the prosecutor (1) attempted to inflame the jury's passions by displaying the murder victim's photograph, (2) unfairly endorsed Barbara Vaughn as a witness during trial, and (3) made improper remarks during closing arguments.

### 1. Legal Framework

#### a. Prosecutorial Misconduct Claims

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert.* denied, 544 U.S. 921 (2005). To prevail on his prosecutorial-misconduct claim, Petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637,

643 (1974). It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). On habeas review, the complained-of conduct must be both improper and flagrant, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, __ U.S. __, 127 S. Ct. 1376 (2007), and "'so egregious as to render the entire trial fundamentally unfair.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)).

### b. Defense Counsel

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law'" for purposes of evaluating ineffective-assistance-of-counsel claims. *Williams v. Taylor*, 529 U.S. at 391. Pursuant to *Strickland*, Petitioner must demonstrate that his attorneys' performances were deficient and that the deficient performances prejudiced the defense. *Strickland*, 466 U.S. at 687. "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id*. Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

The prejudice prong of the Strickland test requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

### 2. Inflaming the Jury's Passions

Petitioner contends that the prosecutor deliberately attempted to inflame the jurors' emotions by placing an enlarged photograph of the murder victim in front of the prosecution's table where the jurors could see it. The trial court adjudicated this claim on collateral review and stated that defense counsel implicitly waived the issue by not placing an objection on the record. The trial court also noted that Petitioner had presented no authority for the position that his constitutional rights were violated.

Prosecutors may not deliberately attempt to arouse the jury's passions or prejudice to advance their cases. *Viereck v. United States*, 318 U.S. 236, 247-48 (1943). Here, however, the enlarged photograph of the murder victim apparently was on display for less than a day, and the trial court refused to admit in evidence a smaller picture of the victim. (Tr. Apr. 15, 1999, at 380-82.) The prosecutor's conduct may have been improper, but it was not flagrant. Therefore, Petitioner was not deprived of a fair trial.

### 3. Late Endorsement of Witness

Petitioner asserts that he was denied his right to a fair trial by the prosecutor's unexplained and unjustified late endorsement of prosecution witness Barbara Vaughn. Petitioner claims that the late endorsement violated state law, as well as, his constitutional rights to prepare a defense and to confront his accusers. He contends that he did not have adequate time to investigate Vaughn's background and that he had no opportunity to prepare for her testimony or to address her expected testimony in his opening statement.

The Michigan Court of Appeals reviewed Petitioner's claim and stated that the trial court did not abuse its discretion in allowing late endorsement of a prosecution witness. The state court of appeals noted that, "[t]he witness' testimony merely reiterated the prosecution's theory

of the case as established by other prosecution witnesses." *Martin*, 2001 WL 1277411, at *4.

The court of appeals also stated that there was no exculpatory evidence and no showing of bad faith on the part of the prosecution or the police. In addition, "full disclosure was made to the defendant upon discovery of the information by the prosecution." *Id*.

The Supreme Court has held that defendants in criminal cases have a constitutional right to present a complete defense, *Crane v. Kentucky,* 476 U.S. 683, 690 (1986), and a Sixth Amendment right to confront the witnesses against them. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)). However,

> numerous cases have held that the state's failure to endorse a witness prior to calling that witness to testify does not violate any federal constitutional right and is not grounds for federal habeas relief. It is not a fundamental error to permit a prosecutor to endorse a witness in the course of a trial even though the prosecutor had previously filed an affidavit that such witness did not have material evidence to offer. *Whalen v. Johnson,* 438 F.Supp. 1198 (E.D. Mich. 1977).

*Hence v. Smith*, 37 F. Supp. 2d 970, 982 (E.D. Mich.1999) (internal citations omitted).

Even if Petitioner has alleged a cognizable claim, his claim lacks merit. The prosecutor explained on the second day of trial, that he discovered Barbara Vaughn's witness statement on the previous day. The prosecutor provided the defense attorneys with a copy of Ms. Vaughn's statement and then moved to add Ms. Vaughn to the witness list. (Tr. Apr. 14, 1999, at 213-15.) Petitioner's attorney objected, but the trial court ultimately permitted Ms. Vaughn to testify. She did not testify until the sixth day of trial when both defense attorneys were given an opportunity to cross-examine and re-cross-examine her. Under the circumstances, the Court believes that Petitioner's right to defend himself and his right to cross-examine Ms. Vaughn were not violated.

### 4. Closing Arguments

Petitioner claims that the prosecutor elicited an emotional response from the jurors and expressed a personal belief in his guilt during closing arguments. The disputed remark was:

> [Y]ou know, I don't think there's any question about the tragedy of the situation, about the emotion of the situation, about the ridiculousness of the situation, and the defendant should be punished.

(Tr. Apr. 22, 1999, at 1077.)

Prosecutors may not deliberately attempt to arouse the jury's passions or prejudice to advance their cases. *Viereck*, 318 U.S. at 247. Nor may they express a personal belief in the defendant's guilt. *See United States v. Young*, 470 U.S. 1, 8-9 (1985). A prosecutor's personal opinion about the guilt of the defendant "exceeds the legitimate advocate's role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999), *abrogated on other grounds, Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000).

The prosecutor's comment on the tragedy and emotion of the situation was not improper. It was a comment on the evidence, not an appeal to the jurors' emotions.

The comment that Petitioner should be punished implied that the prosecutor thought he was guilty. However, the trial court sustained defense counsel's objection to the remark and immediately instructed the jurors not to be concerned with punishment. The prosecutor then rephrased his remark by stating that, based on all the evidence, the jurors "should come back and tell the defendant that he's guilty." (*Id*.) To the extent that the remark about punishment was improper, it was not flagrant and its impact on the jury was mitigated by the cautionary instruction.

### 5. Failure to Object to Alleged Prosecutorial Misconduct

Petitioner alleges that his trial attorney was ineffective for failing to object to the prosecutor's conduct and remarks. The record, however, indicates that Petitioner's attorney did object to the late endorsement of prosecution witness Barbara Vaughn. (Tr. Apr. 14, 1999, at 214-15, Tr. Apr. 20, 1999, at 842, and Tr. Apr. 21, 1999, at 924-26.) Petitioner's attorney also objected to the prosecutor's closing argument about punishing Petitioner. (Tr. Apr. 22, 1999, at 1077.) Thus, the portion of Petitioner's claim that alleges counsel did not object to the late endorsement of a witness or to the reference to punishment has no basis in fact.

Defense counsel was not ineffective for failing to object to the prosecutor's remark that it was an emotional and tragic case, because that remark was not improper. As for the photograph of the murder victim, the record indicates that the trial court excluded the smaller photograph from evidence, (Tr. Apr. 15, 1999, at 380-82), and the enlarged photograph was removed following a sidebar conference. *See People v. Martin*, No. 98-08752, at unnumbered page 4 (3d Cir. Ct. Sept. 8, 2003).

The prosecutor's conduct and remarks were not so egregious as to deprive Petitioner of a fair trial. Therefore, any failure to object did not prejudice Petitioner or amount to ineffective assistance of counsel. The state court's conclusion was not contrary to, or an unreasonable application of, *Strickland*.

### D. Denial of Petitioner's Motion to Suppress his Statement

Petitioner contends that the trial court erred when it denied his motion to suppress his statement to the police. Petitioner asserts that the statement should have been suppressed because (1) the police continued to question him after he requested an attorney and (2) he was

denied access to a telephone and family and told that he could not make a call or see his family until after he made a statement.

## 1. Legal Framework

### a. The Right to Remain Silent: *Miranda* and *Edwards*

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning.

*Id.* at 444-45. A valid waiver of the right to have counsel present during custodial interrogation,

> cannot be established by showing only that [the defendant] responded to further police-initiated custodial interrogation even if he has been advised of his rights. [A]n accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (footnote omitted). In other words, "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990).

### b. The Voluntariness of a Statement

Although "[n]o single litmus-paper test for constitutionally impermissible interrogation

16

has been evolved," *Culombe v. Connecticut*, 367 U.S. 568, 601 (1961), "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Factors that may be considered are: extensive cross-questioning by the police, undue delay in the arraignment, refusal to permit communication with friends and legal counsel, the duration and conditions of detention, the attitude of the police toward the suspect, the suspect's physical and mental state, and pressures which influence the suspect's powers of resistance and self-control. *Culombe*, 367 U.S. at 601-02. "A statement is not 'compelled' within the meaning of the Fifth Amendment if an individual 'voluntarily, knowingly and intelligently' waives his constitutional privilege." *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (quoting *Miranda*, 384 U.S. at 444).

### 2. The Evidentiary Hearing and State Court Decisions

The testimony taken at the state court hearing on Petitioner's motion to suppress his custodial statement has been summarized as follows:

> Defendant's Miranda rights were communicated to him both verbally and in writing. The police made sure that defendant could read and understand his rights. Defendant's interrogation lasted only a few hours, and no physical, mental, or other coercive tactics were used during the interrogation process. It was established during testimony that the police administered the required warnings, sought to insure that defendant understood each warning by inquiring whether defendant understood what the warning meant, and obtained an express written confirmation when defendant signed the written warnings before questioning. The trial court, after hearing testimony, found that no impropriety occurred, and that defendant's statements had been voluntarily given.

*Martin*, 2001 WL 1277411, at *5.

The state court's summary of the testimony at the evidentiary hearing is supported by the record. Officer Gregory Edwards testified that he advised Petitioner of his constitutional rights

and that he did not make any promises or use any coercive tactics to obtain a statement from Petitioner.  Officer Edwards also testified that Petitioner did not request an attorney or say that he did not want to talk to the officer.  (Tr. Oct. 8, 1998, at 7-10, 16.)

Petitioner was twenty-three years of age when he was interrogated.  He testified that Officer Edwards claimed to be an FBI agent and encouraged him to defend himself and explain what really happened because everybody was saying that he did everything.  Petitioner further testified that, when he asked to speak with an attorney, the officer took a forty-five minute break and subsequently ushered him to a different room where another man was seated.  Petitioner claimed that he thought the other man was the attorney he had requested.  He then waived his rights and made a statement.  He claimed that he made a statement with the understanding that, after making the statement, he would be taken off restrictions, which prevented him from calling home, having visitors, and taking a shower.  (*Id*. at 36-46.)

Despite these allegations, Petitioner admitted that the officer possessed three witness statements, one of which clearly implicated him.  Petitioner also admitted that he was familiar with the constitutional rights form, having been arrested three previous times by the same police department.  He claimed to know that signing the form meant he was waiving his rights.  Petitioner also conceded that he did not ask any questions of the man whom he presumed was his attorney.  (*Id*. at 38-39, 43-44, 46, and 50.)

Both the prosecutor and defense counsel indicated in their closing arguments that the issue was one of credibility for the trial court to decide.  The trial court made the following ruling at the conclusion of the hearing:

This Court finds that on July 27th, 1998, Investigator Gregory Edwards, of the homicide section, met with defendant Martin in the interrogation room at 1300 Beaubien. He took a statement from the defendant. This Court finds that the defendant was properly advised of his constitutional rights, that the defendant did not request an attorney, that he never asked to stop the questioning.

This Court understands that the prosecutor must establish, by a preponderance of the evidence, that the confession was voluntary, that being a knowing and intelligent waiver of the right to remain silent.

Based on the testimony and the exhibits admitted today, this Court is of the opinion that the statement of the defendant was voluntarily made; that is, that the defendant did in fact knowingly and intelligently waive his right to remain silent. Therefore, the defendant's motion is denied.

(*Id*. at 62-63.) The Michigan Court of Appeals concluded on review of Petitioner's claim that the trial court did not err when it admitted Petitioner's statement.

### 3. Analysis

This Court is required to give special deference to the trial court's resolution of the credibility issue. *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). And because Petitioner asked no questions of the person whom he thought was his attorney, the trial court's determination that Petitioner did not request an attorney was a reasonable determination of the facts.

As for the voluntariness of Petitioner's confession, the Court notes that the questioning was not extensive and there was no undue delay in the arraignment. Petitioner claimed that he was in police custody for two days, but the prosecutor pointed out that Petitioner was arrested early on a Sunday morning and interrogated about noon on the following day. (*Id*. at 20, 48-49.)

Petitioner was warned of his constitutional rights, and Officer Edwards stated that Petitioner did not appear to be under the influence of drugs or alcohol, nor deprived of sleep. Petitioner's age, prior arrests, and familiarity with police procedures weigh in favor of finding that there were no undue pressures on Petitioner's powers of resistance and self-control. In fact,

Officer Edwards described Petitioner as being in a "relaxed mode" and "of sound physical and mental state." (*Id*. at 7-8, 32-33.)

The record indicates that Petitioner's confession was voluntary and that he freely waived his rights. Therefore, the state court's findings and conclusions of law were objectively reasonable.

### E. The Joint Trial

Petitioner alleges next that the trial court abused its discretion in refusing to sever his trial from that of his co-defendant. Even though the two defendants had separate juries, Petitioner maintains that his co-defendant's attorney undermined Petitioner's defense by asking Catherine Crawley about the shooter's complexion. (Tr. Apr. 15, 1999, at 443-501.) Crawley maintained that the shooter was a dark-complected man and that Petitioner's co-defendant was the light-skinned man she saw in the car. Because Petitioner's skin tone apparently is darker than his co-defendant's, he argues that the co-defendant's attorney shifted the burden of proof to him to prove that he was not the dark-complected man who fired the gun. The trial court adjudicated this issue and concluded that it did not abuse its discretion in denying Petitioner's motion to sever his case, because the disputed information about the dark-complected individual would have come before the jury even in a severed trial.

Petitioner asserts that the trial court improperly applied and relied on *People v. Scott*, 61 Mich. App. 91 (1975). The misapplication of state law, however, is not a basis for habeas relief. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68

(1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)).

Petitioner relies on *Zafiro v. United States*, 506 U.S. 534 (1993). However, "*Zafiro* involved the interpretation of Federal Rules of Criminal Procedure 8, 14, and 18, not the United States Constitution. *Zafiro* thus has no precedential weight in reviewing state court proceedings on due process grounds . . . ." *Phillips v. Million*, 374 F.3d 395, 398 (6th Cir. 2004).

Furthermore, counsel for the co-defendant did not argue that Petitioner was the dark-complected individual who fired at the victims. Although the attorney repeatedly questioned Ms. Crawley about the complexion of the individuals she saw, the most incriminating evidence came not from the eyewitnesses to the shooting, but from Barbara Vaughn and Kiesha Caldwell, who testified about Petitioner's comments before and after the shooting.

The jurors were not prevented from making a reliable judgment about Petitioner's guilt or innocence. Consequently, Petitioner was not prejudiced by the joint trial, nor deprived of a fundamentally fair trial as a result of being tried with his co-defendant. The state court's conclusion was not contrary to, or an unreasonable application of, any Supreme Court decision.

### F. Hearsay

Petitioner claims that he was denied his rights to due process and a fair trial when inadmissible hearsay was introduced into evidence. Petitioner claims that the prosecutor used the hearsay to establish that the shooter premeditated the murder and intended to kill someone.

The alleged hearsay was Barbara Vaughn's testimony concerning Tamika Martin's comment. According to Ms. Vaughn, Tamika exited the white Neon because she (Tamika) did not want to be in the car when there was a shooting. The trial court ruled that Vaughn's

testimony was not hearsay because it was not admitted for the truth of the matter.  (Tr. Apr. 20,

1999, at 854.)  The state court's interpretation of state law binds this Court on habeas review.

*Bradshaw v. Richey*, 546 U.S. 74, __, 126 S. Ct. 602, 604 (2005); *Miskel v. Karnes*, 397 F.3d

446, 453 (6th Cir. 2005).  Even assuming that the alleged evidentiary error rose to the level of a

constitutional error, the alleged error could not have had a "substantial and injurious effect" on

the jury's verdict, *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), because there was other

evidence that Petitioner intended to shoot someone.

**V.  Conclusion**

For all the reasons given above, the state courts' findings did not result in an

unreasonable determination of the facts, and the state courts' conclusions were not contrary to, or

an unreasonable application of, Supreme Court precedent.  Accordingly, the Petition for a Writ

of Habeas Corpus is DENIED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  November 15, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on November 15, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager